UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
…………………………………………….............

JUSTIN JONES, as Administrator of the
Estate of JASON JONES, Deceased,

**Verified Complaint**

Plaintiff,

Civil Action No. 1:23-cv-00087 (MAD/ATB)

- against -

THE VILLAGE OF CATSKILL and MARK NAZI,
DANIEL GOLDPAUGH and NICHOLAS J. CRAIG,
Individually and as Agents and Employees of
the VILLAGE OF CATSKILL, and "JOHN DOES"
as Unnamed Agents and Employees of the
VILLAGE OF CATSKILL,

Defendants.
………………………………………………......

The plaintiff, Justin Jones, as Administrator of the Estate of Jason Jones, deceased, by and through his attorneys, Luibrand Law Firm, PLLC (Kevin A. Luibrand, of counsel), as and for a Verified Complaint against the defendants, states and alleges as follows:

## BACKGROUND AND JURISDICTION

1. This is an action at law pursuant to Title 42 U.S.C. § 1983 to redress the deprivation by defendants, acting under color of statute, ordinance, regulation, custom and/or usage of a right, privilege or immunity secured to the decedent, Jason Jones, by the Fourth and Fourteenth Amendments of the Constitution of the United States of America, as well as pendent claims arising under the laws and Constitution of the State of New York.

2. This action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendment, federal law, as actionable under Title 42 U.S.C. § 1983 as well as under the Constitution and laws of the State of New York.

3. This court has jurisdiction of this case under Title 28 U.S.C. §§ 1331 and 1367(a).

**PARTIES**

4. The Plaintiff is Justin Jones, as Administrator of the Estate of Jason Jones.

5. Justin Jones resides in the County of San Juan, Washington, and the Administration of the estate was created by appointment by the Surrogate's Court, Greene County, New York and venued in Greene County, New York.

6. Plaintiff was appointed as Administrator of the Estate of Jason Jones on May 4, 2022. Letters of Administration are annexed hereto as Attachment A.

7. Defendant Village of Catskill is a governmental subdivision of the State of New York, and at all times relevant, employed the members of the Village of Catskill Police Department.

8. Defendant Mark Nazi ("Nazi"), Daniel Goldpaugh ("Goldpaugh"), and Nicholas J. Craig ("Craig") were, at all relevant times, employees and agents of the Village of Catskill.

9. "John Does" were, at all relevant times, yet unnamed employees and agents of the Village of Catskill, and their actions hereafter were done in the course of their employment with the Village of Catskill.

10. The Village of Catskill, Mark Nazi, Daniel Goldpaugh, Nicholas J. Craig and "John Does" are collectively referred to as "Defendants."

11. Each and all of the acts of the Defendants as described herein were performed in furtherance of their employment with Defendant Village of Catskill.

**FACTS**

12. On October 30, 2021, Jason Jones entered the front lobby of the Village of Catskill Police Department at 422 Main Street, First Floor, Catskill, New York, 12414.

13. Jason Jones was an unarmed civilian and lawfully entered the front lobby.

14. For approximately ten minutes, Defendants spoke with Jason Jones.

15. During the period that Jason Jones spoke with Defendants, Jason Jones exhibited signs of emotional distress.

16. Then Jason Jones began to empty his pockets, and placed his personal items on a table in the front lobby, thereby showing Defendants that he had nothing in his pockets.

17. Jason Jones then removed his shirt and exposed his torso.

18. It was apparent to the Defendants that Jason Jones was unarmed.

19. For an additional three minutes thereafter, while Jason Jones both sat and stood, Jason Jones spoke with Defendants.

20. During the same period, Jason Jones removed his shoes.

21. Jason Jones then left the lobby area in the direction of the lobby front entranceway.

22. Less than a minute later, Jason Jones walked back into the front lobby of the police department, where the Defendants remained standing.

23. For an additional approximately eight minutes, Defendants and Jason Jones spoke in the police department lobby.

24. Jason Jones then walked toward the front area of the lobby.

25. Within a minute, Jason Jones, who now had no shirt or shoes, and whose pockets were emptied, returned to the front lobby of the police department and picked up a bottle of alcohol-based hand sanitizer .

26. In the presence of the Defendants, Jason Jones began to dispense the hand sanitizer onto his exposed body.

27. The Defendants observed Jason Jones dispense the hand sanitizer onto his exposed head and torso in their presence.

28. The alcohol-based hand sanitizer and its fumes were combustible and flammable.

29. The Defendants knew or had reason to believe that the alcohol-based hand sanitizer and its fumes were combustible and flammable.

30. Defendant Nazi then pointed a conductive energy weapon ("CEW") at Jones that, when engaged, would generate electrical sparks from its connectors.

31. Defendants Goldpaugh and Craig stood near Jason Jones watching Defendant Nazi aim the CEW at Jason Jones.

32. Defendant Nazi then shot Jason Jones with the CEW, delivering an electrical current and sparks to the alcohol-based hand sanitizer and fumes on Jason Jones's body.

33. Jason Jones's torso and head ignited into flames by and as a result of the electrical current and sparks from the CEW igniting the flammable and combustible hand sanitizer.

34. After observing Jason Jones ignite into flames, Defendants ran away from Jason Jones.

35. For approximately twenty-four (24) seconds, Defendants allowed Jason Jones to burn without providing assistance.

36. A citizen who had observed the events from outside the lobby came into the front lobby and began to tend to Jason Jones.

37. For approximately six minutes, Defendants continued to watch as the citizen provided non-medical comfort care to Jason Jones.

38. For approximately six minutes, Defendants observed Jason Jones's condition, saw that Jason Jones was having difficulty breathing and that Jason Jones had sustained burns to his head, face, chest, neck, abdomen, back, arms, hands, and torso.

39. Jason Jones then collapsed to the ground near the lobby bench where he had been sitting.

40. At this time, the Defendants continued to stand near to Jason Jones and did not render medical assistance to Jones.

41. Thereafter, for approximately five minutes, John Does came into and left the lobby and none provided medical assistance to Jason Jones.

42. An unidentified woman, with her hands in her pockets, walked into the front lobby.

43. Seconds later, the unidentified woman walked out of the front lobby, through the adjacent hall or room, and then wheeled a mobile stretcher into the front lobby.

44. Thereafter, Jason Jones placed himself onto the mobile stretcher and was wheeled out of the front lobby.

45. After being detained by the Defendants, Jason Jones was transported to Albany Medical Center in Albany, New York.

46. Defendants shooting Jason Jones with the CEW while knowing that Jason Jones had a highly flammable substance on his exposed torso and head proximately caused Jason Jones to ignite into flames and suffer severe injuries to his body and lungs.

47. Jason Jones suffered external first and second degree burns to his face, neck, chest and back, and internal injuries by and as a result of Defendants' actions.

48. Jones suffered severe injuries to his lungs by and as a result of Defendants' actions.

49. On October 30, 2021, Jason Jones was transferred to Upstate University Hospital in Syracuse, New York, to be treated within the intensive care unit.

50. By and as a result of Defendants' actions, Jason Jones suffered burns to between twenty (20%) and twenty-nine (29%) percent of his body.

51. By and as a result of Defendants' actions, Jason Jones suffered acute respiratory failure and internal organ damage.

52. By and as a result of Defendants' actions, Jason Jones received intensive care medical services for forty-six (46) days at Upstate University Hospital, incurring medical expenses in connection therewith.

53. By and as a result of Defendants' actions, Jason Jones died on December 15, 2021.

54. Prior to his death, Jason Jones suffered and expressed conscious pain and suffering.

55. Jason Jones' injuries and death were directly and proximately caused by the aforesaid actions and omission of the Defendants.

56. Jason Jones died by and as a result of the injuries that he suffered from Defendants deploying a CEW against Jones, causing Jones to ignite into flames.

57. Jason Jones died by and as a result of Defendants' failure to render assistance to Jason Jones after their actions had ignited him on fire, and instead Defendants ran away, leaving Jason Jones to burn in the Village of Catskill Police Department's front lobby and suffer severe injuries that would cause his death.

58. On the 27th day of January, 2022, Plaintiff caused a notice of claim to be duly served upon the Village of Catskill.

59. On the 12th day of May, 2022, Plaintiff caused a notice of claim to be duly served upon the Village of Catskill.

60. On the 23rd day of August, 2022, the attorneys for the Village of Catskill conducted a hearing pursuant to General Municipal Law §50-h regarding Plaintiff's allegations in the notices of claim.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:**

**EXCESSIVE FORCE**

*Violation of Decedent's Fourth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983*

61. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

62. That on October 30, 2021, Defendants used excessive force against Jason Jones by deploying a CEW and shooting him with sparking electrical current that caused Jason Jones to ignite.

63. That Defendants were, upon information and belief, trained to not deploy a CEW where an emotionally disturbed person is not a threat to themselves or others.

64. That Defendants were, upon information and belief, trained to not deploy a CEW when a targeted person is exposed to highly flammable or combustiblematerials.

65. That alcohol-based hand sanitizer and its fumes are flammable and combustible.

66. That Defendants, upon information and belief, had knowledge, or through the exercise of reasonable care would have known that alcohol-based hand sanitizer was a flammable and combustible product.

67. That Defendant Nazi shot Jason Jones with an electrical sparking current after observing that Jason Jones had put hand sanitizer, a known flammable and combustible product, over his exposed head and torso.

68. That Jason Jones did not pose a danger to Defendants or others before Jason Jones was shot with an electrical current by Defendant Nazi.

69. That Defendants were unjustified in the deployment of the CEW which emits sparking electrical current against Jason Jones.

70. That Defendants knew or should have reasonably known that deploying a CEW against Jason Jones while he had highly flammable and combustible hand sanitizer on his body would cause Jason Jones to suffer bodily harm.

71. That, upon information and belief, Defendants failed to adhere to their own training and procedures when deploying the CEW against Jason Jones while Jason Jones had flammable and combustible hand sanitizer on his exposed body.

72. That each and all of the actions of Defendants were done intentionally, recklessly and maliciously, and with disregard for the welfare of Jason Jones.

73. That Defendants failed to put out the flames and render medical aid to Jason Jones after causing Jason Jones to ignite into flames, and instead allowed Jason Jones to burn.

74. That the Defendants' actions and omissions as described herein were unconstitutional, and directly and proximately caused Jason Jones to experience severe bodily harm and death.

75. That such actions served to deprive decedent Jason Jones of the rights and privileges of the United States Constitution, the Fourth and Fourteenth Amendments of the United States Constitution, as he was deprived of his right to be free from excessive force, and his right to life.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:**

*Violation of Decedent's Fourth and Fourteenth Amendment Rights Under 42 U.S.C. § 1983*

76. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

77. That Defendants, with an opportunity to do so, failed to intervene and prevent Defendant Nazi from shooting Jason Jones with the CEW, knowing that use of the CEW under the circumstances violated, upon information and belief, the Defendants' training and the Village of Catskill use of force policies.

78. That Defendants failed to intervene after Defendant Nazi had used excessive force by shooting Jason Jones with the CEW and failed to provide assistance to Jason Jones while they observed Jason Jones burn.

79. That the Defendants failed to assist Jason Jones and, instead, ran outside of the front lobby and allowed Jones to continue to burn.

80. That the Defendants intentionally, willfully, maliciously and with disregard for the welfare of Jason Jones chose not to assist Jason Jones.

81. That the Defendants had a duty to Jason Jones to prevent Defendant Nazi from shooting Jason Jones with the CEW.

82. That the Defendants breached their duty to Jason Jones when failing to prevent Defendant Nazi from using excessive force against Jason Jones.

83. That at all times, the Defendants had a reasonable opportunity to stop Defendant Nazi from shooting Jason Jones with the CEW.

84. That at all times, the Defendants had a reasonable opportunity to stop Jason Jones burning and render medical assistance to Jones after he was shot by the CEW.

85. The Defendants' failure to intervene was a direct and proximate cause of Jason Jones's severe bodily harm, suffering, and loss of life.

86. That such actions served to deprive decedent Jason Jones of the rights and privileges of the United States Constitution, the Fourth and Fourteenth Amendments of the United States Constitution, as he was deprived of his right to be free from physical injury and unwanted use of force, and ultimately, his right to life.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:

*Monell Liability Pursuant to 42 U.S.C. § 1983*

87. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

88. That then-Village of Catskill Police Chief David Darling was the policy maker for Defendant Village of Catskill related to the police department.

89. Chief Darling supervised the Defendants, determined the training required, arranged for training and/or trained the Defendants, and developed standards for the Village of Catskill police officers.

90. That Chief Darling provided Defendants with a CEW to use in the performance of their duties.

91. That Chief Darling had an expectation that Defendants would face circumstances where they would have to decide whether to use a CEW on a person.

92. Chief Darling had an expectation that Defendants would face circumstances where they would have to decide when and whether to intervene in circumstances where a police officer was about to use excessive force on a person.

93. Chief Darling had an expectation that Defendants would face circumstances where they would face a medical situation for a citizen that was created by another police officer.

94. That each of the aforesaid circumstances, if confronted by Defendants without proper training and supervision, would reasonably result in the violation of a person's civil rights.

95. There is training that could be provided to Defendants with respect to each of the above that would properly train Defendants how to act in each of said circumstances such that Defendants would act in a manner to prevent the violation of a person's civil rights.

96. Defendant Village of Catskill failed to properly supervise and train Defendants in a manner that would avoid excessive force, including the use of CEW weapons against individuals who were showing signs of emotional distress and exposed to flammable and combustible products.

97. That the Village of Catskill failed to properly supervise and train the police officers, including Defendants, to intervene when a police officer was in the process of using excessive force on a person.

98. That the Defendant Village of Catskill failed to properly supervise and train the Defendants to properly respond to individuals in need of emergency assistance following the improper use of a CEW or upon becoming injured by a Co-Defendant.

99. The Defendant Village of Catskill's failure to properly supervise and train the Defendants was a direct and proximate cause of Jason Jones' severe bodily harm, suffering, and loss of life.

100. That the Village of Catskill was deliberately indifferent to the knowledge that the Defendants did not have the proper supervision or training to respond to crisis situations such as the one that caused the injuries to and death of Jason Jones.

101. That the failure to supervise and/or train Defendants directly and proximately caused the deprivation of decedent's constitutional rights secured by 42 U.S.C 1983, including,

but not limited to, rights guaranteed under the Fourth and Fourteenth Amendments to be free from excessive force and death.

102. That the Village of Catskill's failure to train and supervise the Defendants in how to approach situations of crisis, both in medical response and the use of force, actually encouraged the Defendants to use excessive force against Jason Jones.

103. That the Village of Catskill's failure to train and supervise the Defendants in how to render proper emergency aid actually encouraged the Defendants to run away from Jason Jones instead of providing assistance to him as he burned.

104. That such actions served to deprive decedent Jason Jones of the rights and privileges of the Fourth and Fourteenth Amendments of the United States Constitution, as he was deprived of his right to be free from physical injury and unwanted use of force, and ultimately the most fundamental right, his right to life.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:**

*Excessive Force*

*Violation of the Decedent's rights under the New York State Constitution*

105. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

106. That Defendants' actions served to deprive decedent Jason Jones of the rights and privileges of the New York State Constitution as he was deprived of his right to be free from physical injury and unreasonable use of force.

107. That the Defendants' aforesaid actions and omissions as described hereinabove directly and proximately caused Jason Jones to experience severe bodily harm and death.

108. That such actions deprived decedent Jason Jones of the rights and privileges of the New York State Constitution, as he was deprived of his right to be free from physical injury and unwanted use of force, and ultimately the most fundamental right, his right to life.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:

*Violation of the Decedent's rights under the New York State Constitution*

109. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

110. That Defendants engaged in conduct so as to demonstrate a substantial lack of concern whether decedent was an actual threat to the police officers prior to using a CEW against Jason Jones, whether deploying the CEW against Jason Jones would cause him to ignite into flames, and whether Jason Jones was in danger and required immediate medical assistance upon Defendants igniting him in flames.

111. That Defendants owed Jason Jones a duty of care as agents and employees of the Village of Catskill by and as a result of having Jason Jones in their custody.

112. That Defendants breached that duty of care by negligently using a CEW against Jason Jones while Jason Jones had flammable and combustible hand sanitizer on his exposed body and head, causing him to ignite, and then running away from Jason Jones and failing to render any assistance to Jason Jones.

113. That Defendants' conduct was the direct and proximate cause of decedent's injuries and death.

114. That such actions served to deprive decedent Jason Jones of the rights and privileges of the New York State Constitution as he was deprived of his right to be free from

physical injury and unwanted use of force, and ultimately the most fundamental right, his right to life.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:

*Assault And Battery*

115. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

116. That the Defendants assaulted and battered Jason Jones when Defendants deployed the CEW, struck Jason Jones with an electrical current, and caused Jason Jones to ignite into flames.

117. That the Defendants' actions were intentional and willful, and with reckless disregard for the impact upon Jason Jones, and done for the purpose of injuring Jason Jones.

118. That the Defendants did not have justification for the use of force against Jason Jones.

119. That the Defendants' use of force against Jason Jones was unreasonable.

120. That as a direct and proximate result of the acts described above, Jason Jones was seriously injured and died.

121. That such actions served to deprive decedent Jason Jones of the rights and privileges of the New York State Constitution as he was deprived of his right to be free from physical injury and unwanted use of force, and ultimately the most fundamental right, his right to life.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:**

*Negligence*

122. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

123. That each of said individual Defendants was negligent in the manner that they treated Jason Jones.

124. That the Defendants' negligence proximately caused injury to Jason Jones.

125. That by and as a result of Defendants' negligence, Jason Jones Jason Jones was seriously injured and died as a result thereof.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST THE DEFENDANTS, PLAINTIFF JUSTIN C. JONES, AS ADMINISTRATOR OF THE ESTATE OF JASON JONES, DECEASED, STATES AND ALLEGES THE FOLLOWING:**

*Wrongful Death*

126. Plaintiff repeats and re-alleges the preceding allegations of this complaint with full force and effect as though set forth at length herein.

127. The October 30, 2021 actions of Defendants shooting Jason Jones with the CEW while knowing that Jason Jones had a highly flammable substance on his exposed torso and head proximately caused Jason Jones to ignite into flames and suffer severe injuries to his body and lungs.

128. Jason Jones suffered external first and second degree burns to his face, neck, chest and back, and internal injuries by and as a result of Defendants' actions.

129. By and as a result of Defendants' actions, Jason Jones suffered acute respiratory failure and internal organ damage.

130. By and as a result of Defendants' actions, Jason Jones died on December 15, 2021.

131. Jason Jones' injuries and death were directly and proximately caused by the aforesaid actions and omission of the Defendants.

132. Jason Jones died by and as a result of the injuries that he suffered from Defendants deploying a CEW against Jones while covered in alcohol-based and combustible hand sanitizer, causing Jones to ignite into flames.

133. Jason Jones died by and as a result of Defendants' failure to render assistance to Jones after their actions had ignited him on fire, and instead Defendants ran away, leaving Jason Jones to burn in the Village of Catskill Police Department front lobby and suffer severe injuries that would cause his death.

134. The aforesaid occurrence was proximately caused by and due to the neglect, omission, willful and culpable negligence, recklessness and intentional actions of the Defendants and in otherwise failing to prevent this occurrence.

135. Defendants' intentional acts, negligence and reckless disregard of the due safety of Jason Jones proximately caused his death.

136. As a result of the actions of Defendants as described above, Jason Jones experienced mental anguish, conscious pain and suffering, and sustained fatal injuries.

137. The Defendants' actions were reckless, egregious, grossly negligent, wanton and with absolute disregard for human life.

138. Defendants' conduct is so reprehensible that punitive damages are demanded for such wanton disregard for human life in a sum to be determined at a trial of this action.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff demands a judgment for compensatory and punitive damages against the Defendants in an amount of $20,000,000, together with an award of attorneys' fees, expenses and disbursements for the plaintiff's attorney pursuant to 42 U.S.C. §1988, and such other and further relief as this court deems just, proper, and equitable.

**Plaintiff hereby demands a jury trial with respect to both liability and damages.**

DATED: January 20, 2023                                          LUIBRAND LAW FIRM, PLLC

*Kevin A. Luibrand*

Kevin A. Luibrand, Esq.
Federal Bar Roll No. 102083
Attorneys for Plaintiff
Office and P.O. Address:
950 New Loudon Road
Suite 270
Latham, New York 12110
Telephone: (518) 783-1100
Facsimile: (518) 783-1901
E-mail: kluibrand@luibrandlaw.com

STATE OF WASHINGTON :
                      :ss.
COUNTY OF San Juan :

JUSTIN C. JONES, being duly sworn, deposes and says that he is the plaintiff in the within action; that he has read the complaint and knows the contents thereof; that the same are true to your deponent's knowledge, except as to those matters therein stated to be alleged upon information and belief and, as to those matters, your deponent believes that to be true.

_____
JUSTIN C. JONES

Sworn to before me this
20 day of January, 2023

_____
Notary Public