
# LUIBRAND LAW FIRM, PLLC
**950 NEW LOUDON ROAD, SUITE 270**
**LATHAM, NEW YORK 12110**

---

Kevin A. Luibrand, Esq.  
Ashlynn R. Savarese, Esq.  
Elyse Harmon, Esq.  
_____

Phone: (518) 783-1100  
Fax: (518) 783-1901  
*Service by Fax is not accepted*

Paralegals:  
Janet L. Murray  
Jennifer Setford

Professional Staff:  
Mary Grace Luibrand

April 29, 2025

Honorable Mitchell J. Katz, U.S.M.J.  
United States District Court  
Northern District of New York  
Federal Building and U.S. Courthouse  
P.O. Box 7396  
Syracuse, New York 13261-7396

**Re:   Justin Jones, et al. v. The Village of Catskill, et al.**
**Civil Action No. 1:23-cv-87 (MAD/MJK)**

Dear Magistrate Judge Katz:

Our office represents plaintiff Justin Jones, as Administrator of the Estate of Jason Jones, with respect to this matter. The purpose of this letter is to request a discovery extension and, because this is the second one, I feel compelled to be as specific as possible.

The initial uniform pretrial scheduling order was delayed for a significant period of time while the Attorney General's Office of Special Investigation conducted its investigation into the death of Mr. Jones which. The Attorney General's Office was unwilling to release any evidence related to events leading up to the death of Mr. Jones for almost two years.

On January 24, 2025, I advised the Court that the party depositions were scheduled for March and April of this year and requested an extension of the expert disclosure deadlines. [*CM/ECF document 43*] Your Honor issued a text order setting May 1, 2025 as the deadline for completion of fact discovery, and ordered that plaintiff's expert disclosure be served no later than June 13, 2025 and that defendants' expert disclosure be served no later than July 29, 2025. [*CM/ECF document 44*] The depositions of the individual defendants Mark Nazi, Daniel Goldpaugh and Nicholas Craig, dispatcher Ralph Wagenbaugh and Village representative former Chief David Darling were completed in March, and then current and former employees of the

Website:   LuibrandLaw.com

Luibrand Law Firm, PLLC
April 29, 2025
Page 2

Village who were represented in those depositions to have relevant information were then completed in April, specifically current Chief Michael Waer, dispatcher Joanne Jubie and former Village Clerk Lisa Cope. Two identified Village witnesses were not available, one being on vacation for the dates scheduled (Lieutenant Ronald Frascello) and the other who is retired and was unable to confirm the date (former Village Clerk Betsy Cothren), and there are three other employees of the Village – two sergeants (Cody Bell and David Sherman) and former sergeant Decasio - identified in the deposition of Chief Waer and the depositions as having relevant information that remain to be scheduled.

These depositions conducted in mid-April also revealed other witnesses who have pertinent information with respect to this case. To explain who these witnesses are and their relevance, the incident occurred on October 30, 2021 when plaintiff's decedent, Jason Jones, doused himself with the COVID NYS Clean hand sanitizer in the lobby of the police station while having a mental health crisis. The NYS Clean hand sanitizer consisted of seventy-five percent (75%) isopropyl alcohol, which is significantly higher than the average store-bought hand sanitizer. Defendant Mark Nazi then deployed his conducted energy device (CED) inside of the police station lobby, and the electrical current from the CED ignited the hand sanitizer on Mr. Jones's body at which time he was engulfed in flames and suffered significant burns and internal injuries due to the heat and smoke inhalation. Mr. Jones was ultimately transported to the critical care burn unit at Upstate Medical Center in Syracuse, New York, where he died on December 15, 2021.

As part of their initial Rule 26 disclosure, defendants provided to plaintiff a document titled "Safety Data Sheet" for the NYS Clean hand sanitizer which sets forth the hazard identification, the composition and information on ingredients, handling and storage information, the physical and chemical properties and the transportation information. Annexed hereto as Appendix A is a copy of the Safety Data Sheet provided by defendants. The Globally Harmonized System of Classification and Labelling of Chemicals ("GHS") is a system which standardized how hazardous chemicals are classified. The GHS hazard identification for the NYS Clean hand sanitizer classifies it as a "Flammable Liquid" and "dangerous", and requires it to be labeled with the GHS symbols of a flame and an exclamation point. [*Appendix A page 1*] The GHS hazard statement for the hand sanitizer is classification H225 (highly flammable liquid and vapor), and the prevention statement classifications are P210 (keep away from heat, sparks and other ignition sources) and P242 (use non-sparking tools). [*Appendix A page 1*] Based upon the hand sanitizer's GHS classification, 49 C.F.R. §172.101 requires the product to be labeled with the flammable liquid U.S. DOT symbol "FLAMMABLE 3", which is contained on page 1 of the Safety Data Sheet. [*Appendix A pages 1, 5*]

The defendant officers have denied that they were aware of the flammability of the isopropyl alcohol. Annexed hereto as Appendix B are excerpts of the transcript of defendant Mark Nazi. Defendant Nazi testified at his deposition that at the time of the CED deployment at Mr. Jones, he was not aware that the NYS Clean hand sanitizer was flammable. [*Appendix B at page 242 line 18 – page 243 line 24*] Defendant Nazi further testified to his familiarity with the Emergency Response Guidebook which was issued to him on his first day as a police officer for the Village of Catskill. [*Appendix B at page 242 line 18 – page 243 line 24*] Defendant Nazi also testified that he had been trained to not deploy the CED around known flammables. [*Appendix B*

Luibrand Law Firm, PLLC
April 29, 2025
Page 3

*at page 262 lines 7-19*]

Defendants Daniel Goldpaugh and Nicholas Craig were two other defendant Village police officers who were in the lobby on October 30, 2021 at the time of the incident and who participated to a lesser degree in the deployment of the CED. Annexed hereto at Appendices C and D, respectively, are excerpts of the deposition transcripts of defendants Goldpaugh and Craig. Defendant Goldpaugh testified that he was trained to not deploy the CED around flammable substances, but claimed he was not aware that the isopropyl alcohol-based hand sanitizer was flammable. [*Appendix C at page 63 line 21 – page 64 line 8*] Defendant Craig also testified that he was trained on use of CEDs around flammable substances, but that he too was unaware that the isopropyl alcohol-based hand sanitizer was flammable. [*Appendix D at lines 12-21*] All three defendant officers acknowledged that they witnessed Mr. Jones soak himself with the hand sanitizer minutes before defendant Nazi deployed the CED. [*Appendix B at page 157 lines 18-23; Appendix C at page 65 line 11 – page 63 line 6; Appendix D page 52 lines 9-20*]

David Darling was the Chief of the Village of Catskill Police Department on October 30, 2021. Annexed hereto as Appendix E is an excerpt of the transcript of former Chief Darling. With respect to the NYS Clean hand sanitizer, the former Chief testified that the hand sanitizer was stored at the police department on the first floor. [*Appendix E at page 55 line 20 – page 56 line 3*] Former Chief Darling testified that he did not have any specifics on the ordering or delivery of the hand sanitizer to the police department, but identified former Village Clerk Betsy Cothren[1] and former Lieutenant Ronald Frascello as the individuals responsible for procurement of supplies. [*Appendix E at page 54 line 2 – page 55 line 19*] Mr. Frascello left the department and his deposition was scheduled but he became unavailable because of a vacation at the set date so has not yet testified. Current Chief Waer, who was one of two lieutenants at the time, was questioned and he too did not know where the flammable liquid came from or how it was marked. Chief Waer's deposition has been concluded but, to date, has not yet been transcribed. I questioned former Village Clerk Lisa Cope, who was the Village Clerk at the time of the incident, and dispatcher Joanne Jubie, both of whom also did not know.

On April 9, 2025, in the deposition of Chief Waer, we learned for the first time that the original bottle remains in the police station, and where it or those like it had been stored inside of the police department. We had a discovery meeting pursuant to a written notice for discovery and inspection with our expert on April 10, 2025 to photograph the police station but once there, were barred from the interior of the police station where the defendant officers ran after Mr. Jones burst into flames, and need to examine and photograph the bottle and the area in which it was stored.

We also require to depose the correct employees of Corcraft. NYS Clean hand sanitizer was manufactured/packaged by Corcraft Products at Great Meadow Correctional Facility. [*Appendix A page 1*] Annexed as Appendix F is Corcraft's July 2020 Price & Specification Guide, which states that gallon-sized containers of hand sanitizer come in a case of four. [*Appendix F page 176*] Investigation has revealed that the hand sanitizer was delivered to the National Guard

---

[1] Betsy Cothren was the Village Clerk prior to the incident, but whom former Chief Darling identified as who he would deal with when he needed to purchase supplies. Ms. Cothren was likely the Clerk at the time that the NYS Clean hand sanitizer was ordered for the police department.

Luibrand Law Firm, PLLC
April 29, 2025
Page 4

for distribution throughout the Hudson Valley region. An April 2020 National Guard press release is annexed hereto as Appendix G. The Greene County Emergency Services Center posted in its "Covid19 News & Updates" that they had available for pickup gallon jugs of hand sanitizer. Annexed hereto as Appendix H is a copy of Greene County's posting.

It is pertinent to know from witnesses who had direct involvement of the acquisition of the gallon-sized jugs for the Village police department whether the product contained the GHS and USDOT mandated warning labeling that the product was dangerous and flammable as described above. The defense has provided us with black-and-white copies of the Safety Data Sheet, but New York State issued the warnings in red. No witness has yet told us how the Village came into possession of the safety sheet. Therefore, plaintiff's counsel needs to depose Village Clerk Betsy Cothren and former Lieutenant Ronald Frascello as previously described as to their knowledge, examine the bottle for sourcing and photographing, depose the sergeants who Chief Waer testified also stocked the bottles, as well as subpoena records from and potentially depose Corcraft Products and/or Greene County ESC officials.

Separately, we learned at the deposition of Chief Waer that the Village of Catskill Police Department has been a New York State Division of Criminal Justice Services (DCJS) accredited agency since 2009. As part of the accreditation process, agencies must adhere to and comply with the DCJS Standards and Compliance Verification Manual, a copy of which is annexed hereto as Appendix I. A program manager must be appointed to oversee development and then maintenance of the program. [*Appendix I at page 12*] Section 32.4 of the manual requires that all officers receive an initial training course on electrical and kinetic energy projectiles (conducted energy devices), and annual training thereafter. [*Appendix I at page 95*] The manual cites as a *critical* standard for use of conducted energy devices (i.e., CEDs) a Municipal Police Training Council (MPTC) publication entitled "Recommended Guidelines for the Use of Conducted Energy Devices". [*Appendix I at page 16*] The MPTC Recommended Guidelines for the Use of Conducted Energy Devices is annexed hereto at Appendix J. Section F(d)(i) of the MPTC guidelines reads as follows:

> **Potential for ignitability may exist** if a CED is used on a subject who has been sprayed with an alcohol-based chemical/pepper spray. If **alcohol-based spray** has been deployed on a subject prior to CED application, the CED user should not deploy the CED and instead use another appropriate force action.

[*Appendix J at page 3*]

Agencies are accredited for a period of five years. To become reaccredited, an agency must undergo a reassessment and must be able to demonstrate that compliance with the program standards were maintained for the entire five-year period of accreditation. Annexed hereto as Appendix K is a copy of the DCJS "Guide to Maintaining Accreditation and Preparing for Reaccreditation". Agencies are subject to compliance audits which include a full review of all "critical standards" (which would include annual CED training) in order to maintain accreditation. [*Appendix K at page 12*] The program manager must provide to a DCJS assessor the agency's files for the designated critical standards prior to the on-site visit. [*Appendix K at page 13*] Therefore,

Luibrand Law Firm, PLLC
April 29, 2025
Page 5

as an accredited agency, the police officers of the Village of Catskill underwent annual CED training using the guidelines at Appendix I, which would include instruction on the prohibition of using CEDs on subjects who have come in contact with any type of alcohol-based spray. Chief Waer was the Program Manager for the most recent accreditation prior to the incident on October 30, 2021.

It is critical for plaintiff to be able to determine the identity of the individuals at DCJS and/or the Law Enforcement Agency Accreditation Council who conducted the 2019 reaccreditation compliance audit, as well as review documents and materials reviewed and gathered by the assessors at the time of reaccreditation and depose the officials at DCJS and/or the Accreditation Council who administered the reaccreditation prior to the incident on October 30, 2021.

As a result of the above, plaintiff hereby requests a ninety (90) day extension of the discovery deadline to August 1, 2025, as well as a ninety (90) day extension of the expert disclosure deadlines in order for the parties to provide to their experts any testimony and materials discovered through depositions so that the experts will have ample time to analyze the information and prepare reports pursuant to FRCP Rule 26.

Thank you for your consideration.

Very truly yours,

LUIBRAND LAW FIRM, PLLC

*Kevin A. Luibrand*

By: Kevin A. Luibrand, Esq.

KAL:jlm

cc:   Thomas K. Murphy, Esq.